IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

REBECCA H.,[1]            )
                          )
            Plaintiff,    )
                          )
vs.                       )   Civil No. 19-cv-032-DGW[2]
                          )
COMMISSIONER OF SOCIAL    )
SECURITY,                 )
                          )
            Defendant.    )

# MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in April 2015, alleging disability beginning on January 29, 2015, the day after a prior application had been denied. She later amended the onset date to September 1, 2015. (Tr. 10, 196). After holding an evidentiary hearing, an ALJ denied the application on March 20, 2018. (Tr. 10-22). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 8, 12.

1

and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. Whether the ALJ erred by failing to account for moderate deficits of concentration, persistence, or pace in the residual functional capacity finding;

2. Whether the ALJ erred by cherry-picking evidence and equating minimal activity with a capacity to perform substantial gainful activity.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However,

while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. She determined that plaintiff had not been engaged in substantial gainful activity since the amended alleged onset date. She was insured for DIB through December 31, 2015. The ALJ found that plaintiff had severe impairments of degenerative disc disease, anxiety disorder, affective disorder, post-traumatic stress disorder (PTSD), and personality disorder, which did not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do light work, with physical and mental limitations. Only the mental limitations are in issue here. The ALJ found that plaintiff was limited to simple repetitive tasks and applying simple information, occasional simple decision-making, occasional changes in routine, and occasional superficial contact with co-workers and supervisors performing tasks not requiring direct interaction with the general public.

Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work as a Unit Clerk (medical secretary), receptionist, merchandise displayer, retail manager, or bartender. However, she was not disabled because she was able to do other jobs that exist in significant numbers in the national economy.

## The Evidentiary Record

4

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a discussion of plaintiff's physical impairments.

1. **Agency Forms**

Plaintiff was born in 1977 and was 38 years old on the alleged date of onset. (Tr. 328). She alleged disability due to a brain injury, bad back, depression, PTSD, and panic disorder. (Tr. 317). She last worked from December 2007 through January 2011 as a medical secretary. (Tr. 318).

In July 2015, plaintiff reported that she was unable to retain new information and could no longer concentrate on one thing. She had panic attacks when stressed and was afraid to go outside most of the time. (Tr. 348). She had to be reminded to do things and had to follow a daily list of chores. (Tr. 350).

2. **Evidentiary Hearing**

Plaintiff was represented by an attorney at the evidentiary hearing in January 2018. (Tr. 67).

Plaintiff was 40 years old at the time of the hearing. She had a service dog with her. She had been living with her fiancé for six years. She left her last job because she fell and hurt her hip. (Tr. 69-71). Her medications helped somewhat. When they were working, she got out of bed, but when they were not working, she stayed in bed. About every six or seven months, her medications stopped working and her doctor changed them. When the medications were working, she got out of bed, but did not want to leave the house or see anyone or do anything. She had panic attacks about once a week. (Tr. 77-79).

Her service dog was a Shih Tzu. (Tr. 78). She said she took the dog with her any time she left the house, including gong to the grocery store and doctors' offices. (Tr. 81).

Plaintiff testified that she could not work because she got overwhelmed very easily. She could not deal with pressure. Her short-term memory was "gone." (Tr. 74). She only went to the grocery store and doctors' visits. (Tr. 75).

A vocational expert (VE) also testified. The ALJ asked the VE a hypothetical question which corresponded to the RFC assessment. The VE testified that a person with this RFC could not do plaintiff's past work. She identified jobs at the light and sedentary exertional levels that could be done by a person with plaintiff's RFC. The VE testified that she would be terminated if she consistently missed two days of work a month or if she were off task 20% or more of the day. (Tr. 86-88).

3.  **Mental Health Treatment**

An MRI of plaintiff's brain and an EEG in October 2014 were normal. (Tr. 419-420).

Raymond Leung, M.D., performed a consultative physical exam in August 2015. This included a "mini mental status." Dr. Leung noted that she was not able to remember three objects after five minutes and stated that she may have difficulties managing funds because of decreased memory. (Tr. 423).

Stephen Vincent, Ph.D., performed a consultative psychological exam in August 2015. Plaintiff gave a history of severe abuse and domestic violence perpetrated by an ex-boyfriend. She reported symptoms of PTSD, anxiety, and depression, as well as what Dr. Vincent described as troubles with maintaining

6

adequate perception of self and bonding and attaching related to probable borderline personality traits. On exam, plaintiff's mood was moderately anxious, and she had difficulties maintaining her train of through secondary to lack of confidence. At times she lost her focus and appeared to be "hurried by her anxiety" but she was able to respond with redirection. She was hypervigilant and easily startled. He concluded that, "Cognitively, although preoccupied, she is logical, coherent and relevant." (Tr. 431-434).

Plaintiff received mental health treatment at McKinley Health Center/Southern Illinois Healthcare Foundation. She was seen by RN Carole Hunt and LCSW Lang Nelson. She was treated there on numerous visits between January 2015 and October 2017. (Tr. 441-555, 574-628, 737-787).[4] In January 2015, she told RN Hunt that she was depressed with crying spells and night terrors. She had memory problems. She reported a history of abuse by a prior boyfriend. He went to prison for that, but only for two years. She had a history of sexual assault. She had flashbacks, nightmares, intrusive thoughts, startle response, phobic public avoidance, guilt, shame, and withdrawal. Nurse Hunt diagnosed her with social phobia and PTSD, and prescribed Buspirone for anxiety, and Effexor and Trazodone, both antidepressants. (Tr. 448-453). In February 2015, a diagnosis of depressive disorder was added. (Tr. 454).

Plaintiff's symptoms waxed and waned over the treatment period, and her medications were adjusted. In May 2015, she continued to be "very anxious and afraid to go outside." A diagnosis of agoraphobia with panic disorder was added.

---

[4] Many of those records are duplicates.

7

(Tr. 459). On exam, she was cooperative, calm, and oriented. Her mood was sad, and affect was anxious and sad. Insight and judgment were impaired, and her thought process was circumstantial. (Tr. 463). In June 2015, she reported to LCSW Nelson that she was having panic attacks every other day and was anxious when leaving the house at the thought of contact with her ex-boyfriend, who had been released from prison. (Tr. 464).

In August 2015, two weeks before the alleged onset date, RN Hunt observed that plaintiff was "very anxious in the session." She was twirling her hair and fidgeting, and her heartrate was "tachy." (Tr. 501). She reported to her counselor that she would like to have a yard sale despite her anxiety around others. They set a goal of improving her memory and resuming activities she did prior to the trauma. An outcome would be to be able to drive herself to the grocery store and shop without having a panic attack. (Tr. 507). In September 2015, RN Hunt observed that plaintiff was very tense and anxious. She said she had gotten her dog approved as an emotional support animal and he travelled with her sometimes. (Tr. 517). She appeared for an appointment the next month with the dog and was more relaxed. (Tr. 535). In October, she still had irritability but did not want to take another medication. Her counselor discussed the "stand still with the yard sale." (Tr. 540). RN Hunt added Depakote for irritability and anger in December 2015. (Tr. 550).

In March 2016, her counselor noted that the goal of improving memory and resuming activities with an outcome of driving to the store and shopping without a panic attack had not been met. The review date was moved to September 2016.

8

(Tr. 612). In May 2016, RN Hunt noted that plaintiff had run out of her medications and had experienced "a very bad discontinuation syndrome." (Tr. 608). In August 2016, plaintiff reported that she was depressed and "losing interest." She complained that it seemed that her medications quit working after six months. Her medications were changed. (Tr. 600-601). On exam, she was cooperative, calm, and oriented. Her mood was sad, and affect was anxious, sullen, sad, and constricted. Insight and judgment were impaired, and her thought process was circumstantial. (Tr. 604).

In January 2017, plaintiff reported that she was doing well except for some seasonal blues. She did not want to change her medications. She had not been to counselling for a while due to transportation problems. (Tr. 595). In March, she reported anxiety and "car crash dreams." She had a panic attack three days earlier because she went to the store and it was very crowded. (Tr. 590-591). In June 2017, plaintiff reported that her brother had stage 4 cancer and she was going back and forth to Dallas to help take care of him. RN Hunt increased the dosage of Ambien because she was unable to sleep. (Tr. 586). In August she reported that her brother had died. (Tr. 581).

At the last visit in October 2017, plaintiff reported that her mother wanted to move to Illinois. Plaintiff was going to fly to Arizona to help her pack and then ride back home with her mother. She asked for a letter to get her service animal on the plane. RN Hunt prescribed Klonopin to help with anxiety on the flight and the ride home. (Tr. 577).

4. **State Agency Consultants' Assessments**

9

In September 2015, acting as a state agency consultant, Kirk Boyenga, Ph.D., assessed plaintiff's mental RFC based on a review of the file contents. He used electronic versions of the agency forms that are commonly used for this purpose, the Psychiatric Review Technique Form and the Mental RFC Assessment Form. (Tr. 133-134, 136-138). On the PRT Form, he indicated that plaintiff had moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the Mental RFC form, he answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" Under that section of the form, he rated plaintiff as "moderately limited" in ability to maintain attention and concentration for extended periods and in ability to work in coordination with or in proximity to others without being distracted by them. He also rated plaintiff as moderately limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. He rated her as "not significantly limited" in ability to carry out detailed instructions. Dr. Boyenga also answered "yes" to the question "Does the individual have social interaction limitations?" He rated plaintiff as "moderately limited" in ability to interact appropriately with the general public. In the adaptive limitations section, he rated her as "moderately limited" in ability to respond appropriately to changes in the workplace.

In the sections for "narrative discussion" under each of the above areas, Dr. Boyenga wrote "below." This apparently refers to the last area of the form, entitled "MRFC-Additional Explanation." Here, Dr. Boyenga wrote, in part, "Claimant is

capable of performing simple tasks. Social skills are impaired, but allow settings with reduced interpersonal contact. Claimant is able to retain friendships. Adaptation abilities are limited, but allow routine, repetitive tasks. Claimant can follow instructions." (Tr. 149).

In April 2016, a second state agency consultant, Kathleen O'Brien, Ph.D., completed the same forms. (Tr. 163-165, 168-171). Her findings on the PRT Form were the same as Dr. Boyenga's. On the MRFC Form, in addition to the moderate limitations found by Dr. Boyenga, she indicated that plaintiff had moderate limitations in ability to understand and remember detailed instructions and to carry out detailed instructions.

Dr. O'Brien's narrative remarks at the end of the form mirror Dr. Boyenga's statement. In addition, she summarized some of the mental health treatment records. (Tr. 170-171).

## Analysis

Plaintiff first argues that the RFC assessment was erroneous because it failed to account for her moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical

question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. She noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 14).

The ALJ gave "significant weight" to the state agency reviewers' opinions. She noted that they are "highly qualified psychologists and experts in the Social Security disability programs," and that their opinions were supported by objective medical evidence and are "reasonably consistent with the record as a whole." (Tr. 19).

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga*

*v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018).

The Seventh Circuit issued several more decisions in this line of cases earlier this year.

In *Winsted v. Berryhill*, 915 F.3d 466 (7th Cir. 2019), the Court observed:

> Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations. [Citations omitted.] We have also made clear that in most cases 'employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area."

*Winsted*, 915 F.3d at 471.

In *Winsted*, at step three, the ALJ found that the plaintiff had moderate difficulty with social functioning and with maintaining concentration, persistence, and pace. The RFC assessment limited plaintiff to "simple, routine, repetitive tasks with few workplace changes, no team work, and no interaction with the public." *Winsted*, 915 F.3d at 470. The Court held that the hypothetical question based on that RFC assessment was erroneous because it "did not direct the expert to consider problems with concentration, persistence, and pace, which is the hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted*, 915 F.3d at

13

471 (emphasis in original).

In *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019), state agency reviewers found that the plaintiff had moderate limitations in maintaining concentration, persistence, or pace; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. At step three, the ALJ found that the plaintiff had moderate limitations in concentration, persistence, or pace. The ALJ limited the plaintiff to "unskilled work with an SVP of 2 or less, with no fast-paced production line or tandem tasks, at a job that allows her to be off task up to 10% of the workday." *DeCamp*, 916 F.3d at 676. The Seventh Circuit held:

> We agree that the ALJ erred by not including DeCamp's "moderate" limitations in concentration, persistence, and pace in the hypothetical question to the vocational expert. The ALJ's hypothetical to the vocational expert omitted any mention of DeCamp's moderate limitations in the four areas identified by [state agency examiner] Dr. Pape (whose opinion the ALJ cited to support her finding): maintaining attention and concentration for extended periods; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; working in coordination or proximity to others without being distracted; and completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace. The ALJ opted instead to limit DeCamp to "unskilled work" with no "fast-paced production line or tandem tasks." We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace.

*DeCamp, Ibid*.

In *Burmester v. Berryhill*, 920 F.3d 507 (7th Cir. 2019), the Seventh Circuit

14

found no error in an RFC assessment that limited the plaintiff to "simple, routine, repetitive tasks requiring only simple work-related decisions with few changes in the routine work setting and no more than occasional interaction with supervisors, coworkers, and the general public." *Burmester*, 920 F.3d at 509. The reviewing doctor "stated in the 'Statement of Work Capacity' portion of his assessment that Burmester had the 'ability to understand, remember and carry out simple instructions subject to physical limitations,' that 'maintaining concentration and attention should be manageable' and that she 'should be able to withstand routine work stress and adapt to typical job site changes.'" There was no checkbox indicating a moderate limitation in ability to maintain concentration, persistence, or pace. The Seventh Circuit distinguished the case from *DeCamp* on that basis. *Burmester*, 920 F.3d at 511-512.

The Commissioner relies heavily on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). There, the Seventh Circuit rejected plaintiff's argument that it was error to omit a reference to a moderate limitation in concentration, persistence, or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498. That case is distinguishable from the case at hand on that basis.

The Commissioner also cites *Dudley v. Berryhill*, 2019 WL 2152547 (7th Cir. 2019), but that case is nonprecedential. "Opinions, which may be signed or per curiam, are released in printed form, are published in the Federal Reporter, and constitute the law of the circuit. Orders, which are unsigned, are released in

photocopied form, are not published in the Federal Reporter, and are not treated as precedents." Seventh Circuit Rule 32.1(b).

Here, consistent with the opinions of the state agency reviewers, the ALJ accepted that plaintiff has moderate limitations in maintaining concentration, persistence, or pace. The Commissioner fails to address the central point here, which is that the ALJ found that plaintiff has moderate limitations in maintaining concentration, persistence, or pace, but failed to include that limitation in the RFC assessment and the hypothetical question.

The Seventh Circuit has been very clear that a limitation to simple instructions or simple, routine tasks does not adequately account for a moderate limitation in maintaining concentration, persistence, or pace. "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Further, the ALJ cannot simply ignore the consultant's answers to the questions in the PRT Form and the first part of the mental RFC Assessment Form. "Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored." *Varga v. Colvin*, 794 F.3d 809, 816 (7th Cir. 2015). The ALJ also failed to resolve the obvious contradiction between a finding that plaintiff has the ability to perform unskilled work for an eight-hour workday and the findings of both state agency reviewers that plaintiff is moderately limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number

16

and length of rest periods.

Defendant points out that the "B" criteria have been amended and attempts to minimize the significance of the findings of moderate limitations by pointing out that "moderate" limitation means that a claimant's "functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." See, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017). But, a moderate limitation is not the same as "no" limitation. A "mild" limitation means that functioning is "slightly" limited and a "marked" limitation means that functioning is "seriously limited." Moderate is between mild and marked. 81 Fed. Reg. 66138, 66164. Therefore, a moderate limitation is more than a slight limitation, and the ALJ may not ignore the state agency consultants' designation of moderate limitations. Further, these definitions do not represent a change in the meaning of these terms:

> Third, we have used the words "mild," "moderate," "marked," and "extreme" under our prior rules for many years. Although we did not provide definitions for most of these terms until now, the definitions in final 12.00F are consistent with how our adjudicators have understood and used those words in our program since we first introduced the rating scale in 1985. As a result, the definitions we provide in these rules do not represent a departure from prior policy.

81 FR 66138, 66147.

The conclusions of the consultants and of the ALJ regarding plaintiff's social limitations also refute defendant's attempt to minimize the significance of the findings of moderate limitations. Both consultants found plaintiff to be moderately limited in ability to interact with the general public and they concluded

17

that she should be restricted to work that does not require such interaction, as did the ALJ. This demonstrates that the state agency consultants and the ALJ understood that a moderate limitation is serious enough to require accommodation.

The ALJ's error requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

It is not necessary to analyze plaintiff's second point. However, the Court notes that the Seventh Circuit has cautioned against equating the ability to engage in limited daily activities with an ability to work fulltime. *Moore v. Colvin*, 743 F. 3d 1118, 1126 (7th Cir. 2014); *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:** July 24, 2019.

*Donald Wilkerson*
**DONALD G. WILKERSON
UNITED STATES MAGISTRATE JUDGE**